**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**QUITMAN COUNTY HEALTH & REHAB, LLC, et al.**                    **PLAINTIFFS**

**v.**                                                                          **NO. 3:25-CV-207-RPC-RP**

**UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES, et al.**                                **DEFENDANTS**

**MEMORANDUM OPINION**

Four long-term care facilities—Quitman County Health & Rehab, LLC (Quitman), Tunica County Health & Rehab, LLC (Tunica), Community Care Center of Vicksburg, LLC, d/b/a Heritage House of Vicksburg (Heritage House), and Bedford Alzheimer's Care Center, LLC (Bedford), (collectively, the LTCs or the Plaintiffs)—bring this suit challenging an arbitration rule promulgated by the Department of Health & Human Services (HHS) and the Centers for Medicare and Medicaid Services (CMS). Now before this Court is the Motion to Dismiss [22] filed by the Defendants HHS, Robert F. Kennedy, Jr.—in his official capacity as Secretary of HHS, CMS, and Mehmet Oz—in his official capacity as Administrator of CMS. The Defendants claim that the Court lacks jurisdiction because the Plaintiffs lack standing to bring this lawsuit and because the Plaintiffs failed to exhaust their claims administratively. The Court has reviewed the parties' respective filings and the relevant law.  For the reasons set forth in this Memorandum Opinion, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss [22].

*Relevant Background*

In 2019, after undergoing the notice and comment process, CMS published a final rule (the "Arbitration Rule") regulating the use of arbitration agreements in long-term care facilities that receive Medicare and Medicaid funding. Presently, the rule is codified as 42 C.F.R. § 483.70(m). The Arbitration Rule states:

1

If a facility chooses to ask a resident or his or her representative to enter into an agreement for binding arbitration, the facility must comply with all of the requirements in this section.

(1) The facility must not require any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue receiving care at, the facility and must explicitly inform the resident or his or her representative of his or her right not to sign the agreement as a condition of admission to, or as a requirement to continue to receive care at, the facility.

(2) The facility must ensure that:

(i) The agreement is explained to the resident or his or her representative in a form and manner that he or she understands, including in a language the resident or his or her representative understands;

(ii) The resident or his or her representative acknowledges that he or she understands the agreement;

(iii) The agreement provides for the selection of a neutral arbitrator agreed upon by both parties; and

(iv) The agreement provides for the selection of a venue that is convenient to both parties.

(3) The agreement must explicitly grant the resident or his or her representative the right to rescind the agreement within 30 calendar days of signing it.

(4) The agreement must explicitly state that neither the resident or his or her representative is required to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility.

(5) The agreement may not contain any language that prohibits or discourages the resident or anyone else from communicating with federal, state, or local officials, including but not limited to, federal and state surveyors, other federal or state health department employees, and representatives of the Office of the State Long-Term Care Ombudsman, in accordance with § 483.10(k).

(6) When the facility and a resident resolve a dispute through arbitration, a copy of the signed agreement for binding arbitration and the arbitrator's final decision must be retained by the facility for 5 years after the resolution

2

of that dispute on and be available for inspection upon request by CMS or its designee.

42 C.F.R. § 483.70(m).

Of the four Plaintiffs, Quitman, Tunica and Heritage House are dual-certified facilities receiving funding under both Medicare and Medicaid. [1 at pgs. 4-5]. Bedford only receives Medicaid funding. [1 at pg. 6]. The LTCs brought four counts in their Complaint: (I) The Arbitration Rule violates the APA because it contradicts the FAA; (II) The Arbitration Rule violates the APA because it exceeds the Defendants' statutory authority under the Medicare Act; (III) The Arbitration Rule violates the APA because it exceeds the Defendants' statutory authority under the Medicaid Act; and (IV) The Arbitration Rule violates the APA because it is arbitrary, capricious, and an abuse of discretion. [1].

On September 26, 2025, the Defendants filed a Motion Dismiss [22], alleging that this Court lacked jurisdiction to adjudicate the claims. Specifically, the Defendants argue that the LTCs lack standing because they have failed to allege a concrete injury-in-fact and failed to exhaust their claims administratively prior to bringing the present lawsuit. [22].

*Standard*

The Defendants seek dismissal of the Plaintiffs' claims under Rule 12(b)(1) for lack of subject-matter jurisdiction. "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." ***Ramming v. United States***, 281 F.3d 158, 161 (5th Cir. 2001) (citing ***Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.***, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence." ***In re S. Recycling, L.L.C.***, 982 F.3d 374, 379 (5th Cir. 2020) (citing ***Ballew v. Cont'l Airlines, Inc.***, 668 F.3d 777, 781 (5th

3

Cir. 2012)). The Court "take[s] the well-pled factual allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

*Discussion*

## I. Article III Standing

At the outset, this Court may only exercise jurisdiction if the Plaintiffs can establish that they have Article III standing. *Tex. Med. Ass'n v. United States Dep't of Health & Human Servs.*, 110 F.4th 762, 772 (5th Cir. 2024). "As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: '"What's it to you?"'" *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 379, 144 S Ct. 1540, 219 L. Ed. 2d 121 (2024) (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). To do so, the Plaintiffs must show that they have suffered an injury in fact that is traceable to the challenged government action and that may be favorably redressed by this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical[.]"'" *Id.* at 560 (quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)).

The Defendants argue that the LTCs have failed to allege a concrete injury in fact sufficient to establish standing. [23 at pgs. 14-15]. In their Complaint, the LTCs allege that the Arbitration

Rule prevents them from engaging in certain business practices that they would otherwise implement—and have implemented in the past—if the Arbitration Rule was not in effect. [1 at pg. 37]. They also allege that the Arbitration Rule could invalidate arbitration agreements that are already effective. [1 at 37]. The Defendants argue that these injuries are not concrete and only present speculation of some future harm. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." ***Clapper v. Amnesty Int'l USA***, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quoting ***Whitmore v. Ark.***, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). Additionally, the Defendants emphasize that the Arbitration Rule has been in effect since 2019 and the LTCs have not identified any specific instances when a resident declined arbitration and later a brought a lawsuit or an increase in litigation after the Arbitration Rule went into effect. [34 at pg. 5]. The Plaintiffs, on the other hand, argue that there have not been instances to identify because they are currently complying with the rule.

"When 'a plaintiff is an object of a regulation "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."'" ***Tex. Med.***, 110 F.4th at 773 (quoting ***Contender Farms, L.L.P. v. U.S. Dep't of Agric.***, 779 F.3d 258, 264 (5th Cir. 2015)). The Defendants do not dispute that the Arbitration Rule regulates the LTCs. [34 at pg. 2]. However, the Defendants do dispute whether being the object of the governmental regulation is enough—on its own—to confer standing. [34 at pg. 2]. In addition to being the object of the regulation, the Defendants insist that the LTCs must allege a concrete injury and that being regulated is not enough. [34 at pg. 2]. However, "[a]n increased regulatory burden typically satisfies the injury in fact requirement." ***Contender Farms***, 779 F.3d 258, 266 (5th Cir. 2015) (citing ***Ass'n of Am. R.R.s v. Dep't of Transp.***, 38 F.3d 582 (D.C. Cir. 1994)).

Taking the complaint's well-pled facts as true and in the light most favorable to the Plaintiffs, the Court holds that the LTCs have been subject to an increased regulatory burden sufficient to establish an injury in fact. Furthermore, that injury is traceable to the action of the Defendants—the implementation of the Arbitration Rule—and redressable by a decision of this Court favorable to the Plaintiffs. Therefore, the Court finds that the LTCs have standing.

## II. Administrative Exhaustion

The LTCs bring their claims under both the Medicare and Medicaid Acts. [1 at pg. 7; 27 at pg. 23]. Counts I and IV challenge the Defendants' authority under the APA to regulate the LTCs for the receipt of both Medicare and Medicaid funds. [1 at pgs. 39, 43]. Count II specifically challenges the Defendants' authority under the Medicare Act [1 at pg. 40] and Count III challenges the authority under the Medicaid Act [1 at pg. 42].[1]

A. Medicare Act

The Defendants argue that the Court lacks subject matter jurisdiction over claims brought pursuant to the Medicare Act because the LTCs did not administratively exhaust the claims. [23 at pg. 18]. Instructive to the Court's inquiry regarding whether it has jurisdiction over the claims raised under the Medicare Act is the Supreme Court's opinion in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000). In *Illinois Council*, the Supreme Court was tasked with interpreting the jurisdictional limitations found in the Medicare

---

[1] The Defendants argue that the Declaratory Judgment Act and the APA do not provide independent bases for federal jurisdiction. [23 at pg. 17]. The Plaintiffs do not address this argument and only argue that federal subject matter jurisdiction is proper under the Medicare and Medicaid Acts. [27 at pg. 23]. Therefore, the Court only addresses jurisdiction under the Medicare and Medicaid Acts. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("This Circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

Act. *Id.* at 7. First, this Court notes that Illinois Council, just like the LTCs in the present case, argued that the court had federal-question jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* Section 1331 states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* (quoting 28 U.S.C. § 1331). Neither Illinois Council nor the LTCs in this case utilized the Medicare review jurisdictional route. *Id.* The process of administrative review under the Medicare Act was laid out by the *Illinois Council* Court:

> The Medicare Act says that a [party]

> > "dissatisfied . . . with a *determination described in subsection (b)(2)* . . . shall be entitled to a hearing . . . to the same extent as is provided in [the Social Security Act, 42 U.S.C. § ]405(b) . . . and to judicial review of the Secretary's final decision after such hearing is provided in section 405(g) . . . ." 42 U.S.C. § 1395cc(h)(1) (emphasis added).

> The cross-referenced subsection (b)(2) gives the Secretary power to terminate an agreement where, for example, the Secretary

> > "*has determined* that the provider fails to comply substantially with the provisions [of the Medicare Act] and regulations thereunder . . . ." § 1395cc(b)(2)(A) (emphasis added).

> The cross-referenced § 405(b) describes the nature of the administrative hearing to which the Medicare Act entitles a home that is "dissatisfied" with the Secretary's "determination." The cross-referenced § 405(g) provides that a "dissatisfied" [party] may obtain judicial review in federal district court of "any final decision of the [Secretary] made after a hearing . . . ." Separate statutes provide for administrative and judicial review of civil monetary penalty assessments. §1395i-3(h)(2)(B)(ii); §§ 1320a-7a(c)(2), (e).

> A related Social Security Act provision, § 405(h), channels most, if not all, Medicare claims through this special review system. It says:

> > "(h) Finality of [Secretary's] decision.

> > "The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the [Secretary], or*

7

> *any officer or employee thereof shall be brought under Section 1331*
> *or 1346 [federal defendant jurisdiction] of title 28 to recover on any*
> *claim arising under this subchapter.*" (Emphasis added.)

Section 1395ii makes § 405(h) applicable to the Medicare Act "to the same extent as" it applied to the Social Security Act.

*Ill. Council*, 529 U.S. at 8-9 (second, third, fifth, sixth, and seventh alterations in original).

The Supreme Court found that the jurisdictional bar clearly prohibited judicial review of "a typical Social Security or Medicare benefits case," without a plaintiff first seeking administrative review. *Id.* at 10. To identify the boundaries of the Medicare jurisdictional bar, the Supreme Court then analyzed whether "the statute's bar appl[ied] when one who *might* later seek money or some other benefit from (or contest the imposition of a penalty by) the agency challenges in advance (in a § 1331 action) the lawfulness of a policy, regulation, or statute that *might* later bar recovery of that benefit (or authorize the imposition of the penalty)[.]" *Id.* Ultimately, the Court determined that the jurisdictional bar *did apply* to challenges of a policy, regulation or statute's lawfulness, excepting instances "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19. Put simply, claims arising under the Medicare Act must proceed through the administrative review process prior to judicial review unless the administrative review process effectively means that the plaintiff would not receive any meaningful review. Without the plaintiff first seeking administrative review, the federal court lacks jurisdiction to adjudicate the claims arising under the Medicare Act. *See* 42 U.S.C. § 1395ii; 42 U.S.C. § 405(h). "At minimum . . . the matter must be presented to the agency prior to review in a federal court. This the [LTCs have] not done." *Ill. Council*, 529 U.S. at 24.

To combat the Medicare Act's strong jurisdictional bar, the LTCs argue that (1) they are presenting a collateral attack that administrative review cannot remedy, and (2) they would receive no review at all by channeling their claims through the administrative review process. [27 at pgs.

8

32, 34]. "For a claim to be collateral, it must not require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018) (quoting *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir. 1999)). Collateral claims do not require administrative exhaustion, because by their very nature, they cannot be remedied by administrative review. *Id.* "Thus, 'when a plaintiff asserts a collateral challenge . . .,' courts shall deem exhaustion waived." *Id.* (quoting *Affiliated Pro.*, 164 F.3d at 285). However, before exhaustion may be deemed waived, "there must have been a presentment to the Secretary. This element[—presentment—]can never be waived and no decision of any type can be rendered if this requirement is not satisfied." *Affiliated Pro.*, 164 F.3d at 285 (citing *Matthews v. Eldridge*, 424 U.S. 319, 328, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); 42 U.S.C. § 405(g)). The LTCs do not allege that they have presented their claims to the Secretary. The presentment of a claim to the Secretary is a nonwaivable requirement prior to any judicial decision. *Id.* Therefore, the LTCs cannot present their claim to the Court as a collateral attack. Furthermore, the substance of the challenge is not collateral. To make a determination on the claims, the Court would be required to "delve into the statute and regulations," meaning that the claims are not collateral. *Family Rehab.*, 886 F.3d at 503 (citing *Heckler v. Ringer*, 466 U.S. 602, 614, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984); *Affiliated Pro.*, 164 F.3d at 284-85)).

The LTCs also argue that channeling their claims through the Medicare administrative review process would mean they would not receive any review. [27 at pg. 34]. The LTCs claim that the Medicare review process is only for the purpose of "challeng[ing] a payment or eligibility determination." [27 at pg. 34]. They claim that "[t]he only conceivable way Plaintiffs could" challenge the Arbitration Rule administratively "is by openly violating the rule in hopes of

prompting some sort of enforcement action." [27 at pg. 34]. The association of LTCs in *Illinois Council* made the same argument: "that application of § 1395ii's channeling provision to the portion of the Medicare statute and the Medicare regulations at issue . . . [would] amount to the 'practical equivalent of a total denial of judicial review.'" *Ill. Council*, 529 U.S. at 20. The Supreme Court in *Illinois Council* made it abundantly clear that limiting the scope of administrative review to "amount determinations" is much too narrow a reading of the statutes and caselaw, and that "Congress, in both the Social Security Act and the Medicare Act, insisted upon an initial presentation of the matter to the agency." *Id.* at 19-20 (citing *Ringer*, 466 U.S. at 627). "Proceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges." *Id.* at 24. Furthermore, the LTCs have not demonstrated that the hardship of violating the rule and being subject to remedial action by HHS would turn "what appears to be simply a channeling requirement into *complete* preclusion of judicial review." *Id.* at 22-23.

For these reasons, the Medicare jurisdictional bar does apply to the claims raised by the LTCs under the Medicare Act. Therefore, Count II is **DISMISSED**. Insofar as Counts I and IV raise claims under the Medicare Act, they are likewise **DISMISSED**. The LTCs must first—at the very least—present these claims to the Secretary and exhaust their administrative remedies.

B. Medicaid Act

The Defendants claim that the Court also lacks subject matter jurisdiction over the Plaintiffs' claims that arise under the Medicaid Act. [23 at pg. 22-23]. The Defendants allege that the claims which arise under Medicaid are "inextricably intertwined" with those that arise under Medicare. [34 at pg. 11]. "Unlike the Medicare Act, the Medicaid Act does not incorporate section 405(g) or (h)." *Avon Nursing & Rehab. v. Becerra*, 995 F.3d 305, 309 (2d Cir. 2021). In *Avon*

10

*Nursing*, the Court of Appeals for the Second Circuit was tasked with this very question: "whether the claim-channeling and jurisdiction stripping provisions that govern claims under the Medicare Act apply to Plaintiffs' claim challenging the Final Rule under the Medicaid Act." *Id.* at 310. There, the Second Circuit determined that because the dually-certified Plaintiffs' "claim that the Final Rule contravenes the Medicaid Aid [was] not *inextricably intertwined* with a claim for benefits or a compliance determination under the Medicare Act[,]" the Plaintiffs did not have to channel their Medicaid claim through the Medicare administrative review process. *Id.* (emphasis added). The Second Circuit determined that the claims were not inextricably intertwined, emphasizing that the "Plaintiffs [sought] to bring a pre-enforcement rule-making challenge that [did] not involve any compliance determination that would trigger section 405(g)'s claim-channeling function." *Id.* at 313. Likewise, the LTCs in the present case bring a pre-enforcement rulemaking challenge independently rooted in Medicaid that is not ""inextricably intertwined" with [a] substantive challenge' to a noncompliance determination." *Id.* (quoting *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000)).

The Defendants argue that "nearly every circuit to consider the question has held that dual-certified facilities cannot repackage Medicare claims as Medicaid claims to avoid administrative review." [34 at pg. 9]. The Defendants cite several cases in support of this argument: *Cathedral Rock*, 223 F.3d at 367; *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1329-30 (11th Cir. 2016); *Michigan Association of Homes & Services For the Aging, Inc. v. Shalala*, 127 F.3d 496, 498, 503 (6th Cir. 1997); and, *Rhode Island Hospital v. Califano*, 585 F.2d 1153, 1161-62 (1st Cir. 1978). However, none of these cases directly address the question that is before this Court and that was before the Second Circuit in *Avon Nursing*.

11

In *Cathedral Rock*, 223 F.3d at 366-67, the plaintiff was challenging an agency determination on substantial compliance, not making a pre-enforcement rulemaking challenge. The Medicaid claim in *Bayou Shores* was inextricably intertwined with its Medicare claims: "the sole reason for termination of Bayou Shores' Medicaid provider agreement was the termination of its Medicare provider agreement for Bayou Shores' failure to comply with Medicare laws and regulations." *Bayou Shores*, 828 F.3d at 1330. The Court of Appeals for the Sixth Circuit did hold that Medicaid claims must be administratively exhausted just like Medicare claims in *Michigan Association*, 127 F.3d at 503. The *Michigan Association* court noted that the "similar structure of the two Acts, evasion concerns, and considerations of judicial economy" supported its conclusion that "Congress intended the exhaustion of administrative remedies to apply" to claims arising under Medicaid. *Id.* In doing so, the Sixth Circuit in *Michigan Association* relied on a case from the Seventh Circuit, *Health Equity Resources Urbana, Inc. v. Sullivan*, 927 F.2d 963, 967 (7th Cir. 1991). Following *Michigan Association*, the Seventh Circuit expressly disavowed the Sixth Circuit's interpretation of *Health Equity*. *See Illinois Council on Long Term Care, Inc. v. Shalala*, 143 F.3d 1072, 1076-77 (7th Cir. 1998) *rev'd on other grounds by Ill. Council*, 529 U.S. at 25. As for the *Califano* case, the Court of Appeals for the First Circuit determined that the gravamen of the claim arose under Medicare. *Califano*, 585 F.2d 1153, 1162 (1st Cir. 1978). Therefore, if "[the court assumed §] 1331 jurisdiction over the Hospital's Medicaid claim [it] would find [itself] in the peculiar position of hearing a case that consists entirely of a challenge to the limits promulgated under [Medicare], when [it was] expressly barred by [Medicare] from entertaining that challenge at [that] time." *Id.* That is not the case here. The LTCs have independently rooted claims in Medicare and in Medicaid. They do not rise and fall together.

12

The Court finds the cases cited by the Defendants to be unavailing. The Court agrees with the analysis of the Second Circuit in *Avon Nursing* and finds that the claims arising under the Medicaid Act are not subject to jurisdiction-stripping and claim-channeling and thus may proceed.

*Conclusion*

For the reasons set forth above, the Defendants' Motion to Dismiss [22] is **GRANTED IN PART AND DENIED IN PART**. Count II of the Complaint [1] is **DISMISSED**. Counts I and IV of the Complaint [1] insofar as they are grounded in the Medicare Act are **DISMISSED**. However, insofar as Counts I and IV are grounded in the Medicaid Act, they are sufficient to state a claim for relief and thus survive the Motion to Dismiss [22]. Count III sufficiently states a claim for relief.

SO ORDERED, this the 28th day of April, 2026.

_____
**UNITED STATES DISTRICT JUDGE**